STATE of Wisconsin, Plaintiff-Appellant,

v.

Chauncer L. SMITH, Defendant-Respondent.†

Court of Appeals

*No. 96–2961–CR. Submitted on briefs April 2, 1997.—Decided November 6, 1997.*

(Also reported in 572 N.W.2d 496.)

†Petition to review denied.

■

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney

general, and *David J. Becker*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Bill Ginsberg* and *Rick B. Meier* of *Mandell, Ginsberg & Meier* of Madison.

Before Eich, C.J., Vergeront and Roggensack, JJ.

ROGGENSACK, J. The State appeals an order dismissing two second-degree sexual assault charges against Chauncer L. Smith on the ground that the statute under which he was charged is unconstitutionally vague. Because we conclude that § 940.225(2)(c), STATS., provides fair notice of the prohibited conduct and also provides an objective standard for enforcement of violations, we reverse the decision of the circuit court and remand for further proceedings.

## BACKGROUND

Smith worked as a caregiver for two mildly retarded adults, one of whom, Ben, was a twenty-two-year-old man with an IQ of fifty-five. During the course of his employment, Smith initiated oral/genital sexual contact with Ben on two separate occasions. As a result, he was charged with two violations of § 940.225(2)(c), STATS., which prohibits "sexual contact or sexual intercourse with a person who suffers from a mental illness or deficiency which renders that person temporarily or permanently incapable of appraising the person's conduct, [when] the defendant knows of such condition."

The circuit court refused to bind Smith over for trial because it concluded that the statute was unconstitutionally vague when it proscribed sexual intercourse or sexual contact with a person who was

"temporarily or permanently incapable of appraising the person's conduct." At the bind-over hearing, Smith testified that he knew that Ben was retarded and he knew that having sexual contact with him was wrong. Testimony at the hearing also showed that Smith's sexual acts with Ben were Ben's first sexual experiences and that Ben had never discussed sexual matters with his therapist or with anyone else. It also showed that Ben did not know of the possibility of sexually transmitted diseases or that he had the right to refuse Smith's overtures.

## DISCUSSION

### Standard of Review.

We review challenges to the constitutionality of a statute without deference to the decision of the circuit court. *State v. Bertrand*, 162 Wis. 2d 411, 415, 469 N.W.2d 873, 875 (Ct. App. 1991).

### Vagueness Challenge.

*1. General Principles.*

We begin our examination of Smith's constitutional challenge to § 940.225(2)(c), STATS., by noting that all statutes reach this court with a presumption that they are constitutional and we review those statutes to preserve their constitutionality. *Bertrand*, 162 Wis. 2d at 415, 469 N.W.2d at 875. A party who brings a constitutional challenge to a statute must show that it is unconstitutional beyond a reasonable doubt. *State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654, 660 (1989). Additionally, in a facial vagueness challenge to

the constitutionality of the law, Smith must establish, beyond a reasonable doubt, that there is no possible application or interpretation of the statute which would be constitutional. *Bowen v. Kendrick*, 487 U.S. 589, 600 (1988); *United States v. Salerno*, 481 U.S. 739, 745 (1987).

Furthermore, if the alleged conduct of a defendant plainly falls within the prohibition of the statute, the defendant may not base a constitutional vagueness challenge on hypothetical facts, unless a First Amendment right is at issue. *State v. Courtney*, 74 Wis. 2d 705, 713, 247 N.W.2d 714, 719 (1976). Stated another way, a defendant who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others, absent an impact on a First Amendment right. And finally, if an actor's conduct plainly falls within the proscription of the law, he cannot make a vagueness challenge. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982).

Vagueness is essentially a procedural due process concept which is driven by notions of fair play. Therefore, a statute is void for vagueness if it does not provide "fair notice" of the prohibited conduct and also provide an objective standard for enforcement of violations. *State v. Pittman*, 174 Wis. 2d 255, 276, 496 N.W.2d 74, 83 (1993). Stated another way, "[t]he first prong of the vagueness test is concerned with whether the statute sufficiently warns persons 'wishing to obey the law that [their] . . . conduct comes near the proscribed area.' " *Id.* (quoting *State v. Tronca*, 84 Wis. 2d 68, 86, 267 N.W.2d 216 (1978)). However, a statute is not void for vagueness simply because in some particu-

lar instance some type of conduct may create a question about its impact under the statute. *Courtney*, 74 Wis. 2d at 711, 247 N.W.2d at 719. In order to be void for vagueness under the first element, the statute must be so ambiguous that one who is intent upon obedience cannot tell when proscribed conduct is approached. *Id.* Under the second element of enforceability, a statute is vague only if a trier of fact must apply its own standards of culpability rather than those set out in the statute. *Id.*

Furthermore, a statute is not unconstitutionally vague simply because it is ambiguous. *State v. Chippewa Cable Co.*, 21 Wis. 2d 598, 606, 124 N.W.2d 616, 620 (1963). And, a criminal statute is not void for vagueness if "by the ordinary process of construction, a practical or sensible meaning may be given to the . . .[law]." *State v. Arnold*, 217 Wis. 340, 345, 258 N.W. 843, 844 (1935).

When we are asked to apply a statute whose meaning is in dispute, our efforts are directed at determining legislative intent. *Truttschel v. Martin*, 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997). In so doing, we begin with the plain meaning of the language used in the statute. *Id.* If the language of the statute clearly and unambiguously sets forth the legislative intent, our inquiry ends, and we must apply that language to the facts of the case.

### 2. Smith's Challenge.

In order for the State to convict Smith of violating § 940.225(2)(c), STATS., the State must prove all of the following: (1) that Smith had sexual contact or sexual intercourse with Ben, (2) that Ben suffers from a mental illness or deficiency, (3) that the mental illness

or deficiency renders Ben temporarily or permanently incapable of appraising his own conduct, and (4) that Smith knew that Ben has a mental illness or deficiency which renders Ben temporarily or permanently incapable of appraising his own conduct.

Smith does not assert he has a First Amendment right to have sexual contact or sexual intercourse with Ben. Therefore, he cannot make a challenge based on hypothetical facts. *Courtney*, 74 Wis. 2d at 713, 247 N.W.2d at 719. Based on the facts of his own case, Smith contends that the statute is unconstitutionally vague because the words "incapable" and "appraising" did not give him fair notice of what type of conduct is proscribed. We disagree with his contention for at least three reasons. First, Smith will not be found guilty absent proof of his knowledge that Ben's mental illness or deficiency rendered him temporarily or permanently incapable of evaluating the proposed sexual acts. Second, the commonly used definitions of "incapable" and "appraising" are not unconstitutionally vague. And third, when read in context, the statute evinces clear legislative intent to protect those vulnerable citizens who may lack the capacity, temporarily or permanently, to protect themselves and thereby puts Smith on notice to consider his own conduct differently than he may have otherwise.

Smith defends the circuit court's decision by asserting that he was not put on notice of what conduct the criminal statute proscribed. However, we find little merit in that argument because the State has the burden of proving that Smith knew of Ben's deficiency and its effect on Ben's ability to evaluate the sexual acts Smith requested, at the time of the sexual contact. Requiring the State to prove Smith's mental state viti-

ates any potential for vagueness that could arise from the statutory terminology. *See Jackson v. State*, 890 P.2d 587 (Ala. App. 1995); *Colautti v. Franklin*, 439 U.S. 379, 395 (1979). We agree with an Alaskan court which noted, "[a]ny inherent uncertainty in the definition . . . would thus have worked to Jackson's advantage, for it would have tended to preclude him from knowing that T.Y.J. was mentally incapable." *Jackson*, 890 P.2d at 595.

■■■

Smith also complains that there are too many meanings of "incapable" and "appraise" to enable him to avoid conduct prohibited by the statute. We disagree. The common sense meanings of the words chosen by the legislature permit a person of ordinary intelligence to know when he/she is approaching proscribed conduct. For example, "To lack the ability" is a common meaning of the word, "incapable." WEBSTER'S NEW COLLEGIATE DICTIONARY 579 (Merriam 1974). And in addition, the statute clarifies the lack of ability as being either temporary (implying that it is capable of changing) or permanent (not subject to change). Furthermore, "appraising" is commonly defined as "evaluating the significance of." WEBSTER'S NEW COLLEGIATE DICTIONARY 55 (Merriam 1974). And, the phrase used in § 940.225(2)(c), STATS., "incapable of appraising," is used by the Model Penal Code, § 213.1(2)(b), to describe circumstances similar to those at issue here. That phrase has been adopted by many state legislatures and enforced by numerous state courts. *See People v. Easley*, 364 N.E.2d 1328, 1331 (N.Y. 1977); *State v. Gonsalves*, 706 P.2d 1333, 1337 (Haw. App. 1985) (standard of review overruled by *State v. Kelekolio*, 849 P.2d 58 (1993)).

Some of the challenges to the words at issue here have been based on vagueness. For example, in *Keim v. State*, 777 P.2d 278 (Ka. App. 1989), a Kansas rape statute that uses the term "incapable" in regard to giving consent, faced such a challenge. In finding little merit to the argument the court stated,

> The language . . . sufficiently warns a person of common intelligence that engaging in sexual intercourse with one who is mentally handicapped to a degree that he or she cannot understand the nature and consequences of engaging in the act is prohibited. Under normal circumstances a mental incapacity to consent would be apparent in ordinary social intercourse. The fact that further questioning may be necessary in some cases to determine if one's partner fully understands the nature and consequences of sexual intercourse, does not render the statute unconstitutional.

*Id.* at 280–81. We agree with the reasoning of *Keim*. The phrase "incapable of appraising the person's conduct" is easily understood by persons of ordinary intelligence. 

And finally, additional information is provided by subsection (4) to put a potential defendant on notice of what his responsibilities are when he contemplates sexual interaction with one who has a mental illness or defect. Subsection (4) states in relevant part:

> "Consent", as used in this section, means words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact. Consent is not an issue in alleged violations of sub. (2)(c), (d) and (g). The following persons are pre-

sumed incapable of consent but the presumption may be rebutted by competent evidence . . .:

 (b) A person suffering from a mental illness or defect which impairs capacity to appraise personal conduct.

 (c) A person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act.

Therefore, the requirement that Ben was "temporarily or permanently incapable of appraising his own conduct," when read in context with subsection (4), is a clear legislative statement that Ben is in a class of persons who are *rebuttably* presumed to be incapable of consenting to sexual intercourse or sexual contact. By so stating, notice is given that the legislature intends to protect those who are vulnerable to manipulation by others who would take advantage of them, in a sexual way, while at the same time not proscribing all sexual conduct with those who have a mental illness or defect.

 The statute also provides an objective standard for enforcement, even though the terms the legislature chose to use are general. A statute does not need to define with precision what is, and what is not, unlawful conduct, in order to survive a vagueness challenge. *Pittman*, 174 Wis. 2d at 276–77, 496 N.W.2d at 83. The finder of fact is given a clear definition of sexual intercourse and sexual contact in § 940.225(5), STATS. Section 940.225(4) establishes an initial presumption that those who are suffering from a mental illness or deficiency which renders them temporarily or permanently incapable of appraising their conduct are incapable of consenting to sexual intercourse or sexual contact.

The physical acts engaged in during Smith's sexual contact with Ben were unknown to Ben, because he had had no prior exposure to them nor any education about them or their consequences. Furthermore, it is commonly understood by people of ordinary intelligence that there is more to sexual intercourse and sexual contacts than the mere physical acts. For example, sexual acts may create health risks (both in regard to sexually transmitted diseases and pregnancy). They may be subject to social taboos or other societal responses that a participant may wish to consider. We are unimpressed by Smith's contention that the statute has no objective standard because he was required to think about Ben and whether Ben lacked the ability to appraise the proposed sexual activity before engaging in sexual acts with him. This statutory requirement is little different, in our view, from requiring one to ascertain the age of a potential sexual partner before initiating sexual contact. Therefore, we conclude Smith's vagueness challenge is without merit and he should have been bound-over for trial. Accordingly, we reverse the decision of the circuit court and remand for further proceedings.

## CONCLUSION

Because we conclude that § 940.225(2)(c), STATS., provides fair notice of the prohibited conduct and provides an objective standard for enforcement of violations, Smith has not met his burden of proving it is unconstitutionally vague beyond a reasonable doubt. Therefore, we reverse the order of the circuit court and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded with directions.