STATE of Wisconsin, Plaintiff-Respondent,

v.

Lester E. HAHN, Defendant-Appellant.†

Court of Appeals

*No. 97–3065–CR. Submitted on briefs June 9, 1998.—Decided August 20, 1998.*

(Also reported in 586 N.W.2d 5.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Dennis J. Miller* of Pittsburgh, Pennsylvania, and *Bruce Elbert* of Juneau.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Alan R. Kesner*, assistant attorney general.

Before Dykman, P.J., Vergeront and Deininger, JJ.

VERGERONT, J.   Lester E. Hahn appeals a judgment of conviction on six counts of intentionally collecting proceeds of a gambling machine, as a party to the crime, pursuant to § 945.03(5), Stats.[1] Hahn argues that § 945.01(3), which defines a gambling machine, is unconstitutionally vague. He also argues there was insufficient evidence at trial to convict him and the State did not timely meet its obligations to disclose certain information under the court's discovery order. We conclude the statute is not unconstitutionally vague and there was sufficient evidence to support the guilty verdicts. We also conclude the trial court properly exercised its discretion regarding violations of its discovery order. Therefore we affirm.

---

[1] Section 945.03, Stats., provides in part:

**Commercial gambling.** Whoever intentionally does any of the following is engaged in commercial gambling and is guilty of a Class E felony:

. . . .

(5)   Sets up for use for the purpose of gambling or collects the proceeds of any gambling machine; or

## BACKGROUND

The six charges arose from events occurring at three taverns in Jefferson County—J & J Mileaway, Pirke's Pub and Jacks R Better—on two dates, November 19, 1990 and November 26, 1990. Pursuant to search warrants, a video poker machine was seized from each tavern on November 26, 1990.

According to the testimony of Thomas Hintz and Tom Farr, Hahn employed them to help him manage video poker machines in taverns in Jefferson County. They testified that Farr, who was Hintz's uncle and was already employed by Hahn, recruited Hintz to the job and helped train him, and Hahn also helped train Hintz. Hintz testified that on November 19, 1990 and November 26, 1990, he collected money from the three taverns and that these funds were the net proceeds of the machines, after payments to the winners had been deducted. Hintz's job was to deliver the proceeds from those taverns to a designated spot at Hahn's house or a shed on property owned by his family. Hahn paid Hintz. Hahn had earlier shown Farr how to collect the proceeds from the machines, and, before Hintz was hired, Farr had collected the proceeds at the three taverns and given them to Hahn; later he left the proceeds either at Hahn's house or the shed.

Hintz described the process he used when he collected the weekly proceeds of the machines. After checking with the tavern owner, he opened the machine, did cleaning and needed repairs, read the meter which showed the amount of money brought in during the week and the amount of points redeemed, and split the difference between those amounts on a 50/50 basis with the tavern owners. Farr testified that he followed this same procedure before Hintz took over this route. According to the evidence presented by the

State, one or more of the three—Hahn, Hintz or Farr—had installed each of the three machines.

The owners of the three taverns each testified to the operation of the machines. They testified that the machines played a video version of the game of poker and required money to play. The tavern owners explained that if a round of play resulted in a winning hand, the machine would award credits, depending on the particular winning hand. The player could use these credits to play more hands, or the credits could be erased from the machine by a remote control device, which was usually located behind the bar. The machine recorded the credits erased, and the bar owners or their employees would then pay the players for the credits they accumulated.

There was also testimony from undercover law enforcement personnel that they had played the video poker machines at each of the three taverns and received payments of cash for accumulated credits from the bartenders.

Hahn testified that he sold his amusement business to Farr in the spring of 1990 and that the taverns in question were not part of his (Hahn's) business at the time of the events charged. Hahn stated that he did not recognize any of the machines at issue, and, during the weeks at issue, he did not own any video machines in the three taverns, collect proceeds from them, receive any proceeds from the machines or know of any payouts made during that period of time.

Tavern owners and law enforcement officers who played poker on the machines testified that they had no control over the cards they were dealt. Sometimes, they testified, players would be able to use some degree of skill to increase their chances of winning, but even skilled players would lose at times. Hahn testified that

675

on these machines a player can become skilled in the operation of the game and that if one plays long enough he or she would know what cards are going to come up next; he also explained how a player can become skilled in playing the machines.

*Vagueness Challenge*

Hahn moved to dismiss the charges against him on the ground that the definition of a gambling machine in § 945.01(3), STATS., is unconstitutionally vague and therefore violates due process. The trial court denied the motion, concluding that the statute was not unconstitutionally vague because it provided adequate notice of the conduct prohibited. On appeal, Hahn repeats his contention that the statute is unconstitutionally vague.

Section 945.01(3), STATS., defines a "gambling machine" as follows:

> (a) A gambling machine is a contrivance which for a consideration affords the player an opportunity to obtain something of value, the award of which is determined by chance, even though accompanied by some skill and whether or not the prize is automatically paid by the machine.
> (b) "Gambling machine" does not include any of the following:
> . . . .
> 2. Any amusement device if it rewards the player exclusively with one or more nonredeemable free replays for achieving certain scores and does not change the ratio or record the number of the free replays so awarded.

Because the resolution of the constitutionality of § 945.01(3), STATS., does not depend on findings of adjudicative facts, it is a question of law, which we review

without deference to the decision of the trial court. *State v. Kay Distrib. Co.*, 110 Wis. 2d 29, 33, 327 N.W.2d 188, 192 (Ct. App. 1982).

The party challenging the constitutionality of a statute has the burden of overcoming the presumption of constitutionality beyond a reasonable doubt. *Wis. Bingo Supply & Equip. Co. v. Wis. Bingo Control Bd.*, 88 Wis. 2d 293, 301, 276 N.W.2d 716, 719 (1979). The court is to indulge in every presumption to sustain the statute. *Id.* A criminal statute is unconstitutionally vague if it either fails to afford proper notice of the conduct it seeks to proscribe, or fails to provide an objective standard for enforcement. *State v. Smith*, 215 Wis. 2d 84, 91, 572 N.W.2d 496, 498 (Ct. App. 1997). In order to give proper notice, a criminal statute must sufficiently warn people who wish to obey the law that their conduct comes near the proscribed area. *Id.* The statute must not be so obscure that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application. *Kay Distrib.*, 110 Wis. 2d at 34, 327 N.W.2d at 192. A statute, however, is not void for vagueness because in some instances certain conduct may create a question about its impact under the statute. *Smith*, 215 Wis. 2d at 91–92, 572 N.W.2d at 498. With respect to the enforcement element of the test, a statute is vague only if a trier of fact must apply its own standards of culpability rather than those set out in the statute. *Id.*

If, by the ordinary process of statutory construction, we can give a practical or sensible meaning to the statute, a criminal statute is not void for vagueness. *Id.* The ordinary process of statutory construction begins with the language of the statute, which we interpret

677

according to its common meaning, and for that purpose we may use a recognized dictionary. *See State v. Sample*, 215 Wis. 2d 486, 494, 498 , 573 N.W.2d 187, 190, 192 (1998). We do not look beyond the statutory language if the statutory language is not ambiguous, *see id.* at 494, 573 N.W.2d at 190–91, and use of a dictionary to ascertain the usual meaning of a word does not render the word ambiguous. *Id.* at 498–99, 573 N.W.2d at 192. However, even if a statute is ambiguous, that alone does not render it unconstitutionally vague if the ordinary rules for construing an ambiguous statute result in a practical or sensible meaning. *See State v. Chippewa Cable Co.*, 21 Wis. 2d 598, 606, 124 N.W.2d 616, 620 (1963).

The statutory definition of gambling machine consists of: (1) a contrivance (2) which for consideration (3) affords the player an opportunity to obtain something of value (4) the award of which is determined by chance, even though accompanied by some skill (5) whether or not the prize is automatically paid by the machine. Section 945.01(3), STATS. It is further defined by excluding an amusement device, which, in essence, serves to further define "something of value," in the third element, so as to permit rewards that are exclusively "nonredeemable free replays for achieving certain scores," so long as the device "does not change the ratio or record the number of free replays so awarded." *Id.* Hahn first argues that § 945.01(3) is unconstitutionally vague because the word "contrivance" and the phrases "some skill" and "automatically paid by the machine" are unacceptably vague.

With respect to "contrivance," Hahn argues that, although this word "is easily definable by 'Mr. Webster,' [it] has no meaning which may be overlaid upon the myriad of devices and machines available in Wis-

consin." Hahn makes no argument that he did not have fair notice that the machines at issue in this case come within the definition of "contrivance." A constitutional challenge of vagueness may not be based only on hypothetical facts—that is, vagueness of the law as applied to the conduct of others—absent an impact on the First Amendment. *Smith*, 215 Wis. 2d at 91, 572 N.W.2d at 498. Since Hahn does not contend that First Amendment rights are implicated, we do not consider whether the word "contrivance" might be vague when applied to a set of facts not present in this case.

With respect to "some skill" and "automatically paid by machines," we understand Hahn to argue that, based on the facts in this case, he did not have fair notice of what constitutes "some skill" or "automatically paid." We therefore address these terms. We conclude they are sufficient to give a person of ordinary intelligence notice of the conduct proscribed.

In *State v. Dahlk*, 111 Wis. 2d 287, 296, 330 N.W.2d 611, 617 (Ct. App. 1983), we construed the phrase "the award of which is determined by chance, even though accompanied by some skill," an element in the definition of lottery, *see* § 945.01(5)(a), STATS., to mean that "[c]hance rather than skill must . . . be the dominant factor controlling the award. . . ." Because this is exactly the same language used for this element of the definition of gambling machine, we adopt the same construction. We reject Hahn's argument that, as construed, the term "some skill" is still unconstitutionally vague. The challenged statute need not define the proscribed conduct with absolute precision. *See State v. Pittman*, 174 Wis. 2d 255, 276–77, 496 N.W.2d 74, 83 (1993). A reasonable degree of certainty is all that is required. *See Kay Distrib.*, 110 Wis. 2d at 34, 327 N.W.2d at 192. The requirement that chance predomi-

nates over skill gives sufficient warning to persons of reasonable intelligence who desire to comply with the law what conduct is proscribed by this element of the definition of "gambling machine" and provides a sufficiently objective standard for the trier of fact.

With respect to the element "whether or not automatically paid by the machine," Hahn points to two cases which discuss the manner in which the prize is paid as an indication that this portion of the definition is unconstitutionally vague: *Paepke v. Leck*, 173 Wis. 2d 230, 496 N.W.2d 181 (Ct. App. 1992), *vacated and remanded*, 179 Wis. 2d 519, 507 N.W.2d 339 (1993), and *State v. Hahn*, 203 Wis. 2d 450, 553 N.W.2d 292 ( Ct. App. 1996). Our decision in *Paepke* was vacated by the supreme court and therefore has no precedential value. We agree with Hahn that *Hahn* presents the question of when a video poker machine is a gambling machine within the meaning of § 945.01(3), STATS. We also agree that a fair reading of our decision in *Hahn* is that not every video poker machine is a gambling machine. *Hahn*, however, does not support Hahn's position that the definition is unconstitutionally vague.

In *Hahn,* on the State's interlocutory appeal of the trial court's proposed jury instructions in this case, we rejected the State's argument that video poker machines are gambling machines "per se." *Hahn*, 203 Wis. 2d at 454, 553 N.W.2d at 293. We concluded that because video poker machines could be used either as amusement devices, as defined by § 945.01(3)(b)2, STATS., or as gambling machines, the jury had to be instructed that it must find the video poker machines to be gambling machines as defined by the statute. *Id.* We also observed that, based on the testimony of the tavern owners at the preliminary hearing, the video poker machines in this case awarded successful players

free replays which were recorded by the machines, and the tavern owners then paid the successful players for the accumulated free replays, expunging the record of the replays by operation of a remote control device behind the bar. *Id.* at 455, 553 N.W.2d at 294. We concluded that a video poker machine operated in this way is not an "amusement device" under § 945.01(3)(b)2 for two reasons: it rewards the successful player with redeemable free replays and the machine records the number of free replays awarded. *Hahn*, 203 Wis. 2d at 455, 553 N.W.2d at 294. We also concluded that, even if the prize is awarded by the tavern owner or employee, a video machine operated in this way was a gambling machine within the meaning of § 945.01(3)(a) because that definition requires only that the machine " 'afford[s]' the successful player an opportunity to obtain 'something of value' even if the player's 'prize' is automatically awarded by the machine." *Id.* at 457–58, 553 N.W.2d at 295.

We had no difficulty in *Hahn* applying the plain language of the statute to the facts recited in the opinion, based on the testimony at the preliminary hearing. We now explicitly construe the language that we implicitly construed in *Hahn*. We start with the language of the statute, and apply the ordinary meaning of "afford" (as in "contrivance which . . . affords the player an opportunity to obtain something of value") and "automatically" (as in "whether or not the prize is automatically paid by the machine") according to a recognized dictionary. The appropriate meaning of "afford" in this context is "[t]o make available; provide." THE AMERICAN HERITAGE COLLEGE DICTIONARY 23 (3d ed. 1993). The appropriate meaning of "automatically" in this context is "[a]cting or operating in a manner essentially independent of external influence or control: . . .

[s]elf-regulating." *Id.* at 93. Following these standard definitions, this portion of the statute requires that the machine, or contrivance, has a role in providing the opportunity to obtain something of value, but that something of value need not be provided by the machine alone without external influence or control. Thus, construed according to the words' usual meanings, this statutory requirement is not ambiguous. It is easily understood by persons of ordinary intelligence and provides a sufficiently objective standard for the trier of fact.

■

Hahn also argues that the definition of "gambling machine" is unconstitutionally vague because prosecutors are making different and inconsistent charging decisions under the statute, and courts have reached different results in deciding whether video poker machines are gambling machines. According to Hahn, this demonstrates that persons of ordinary intelligence cannot understand what the statute means and that the statute does not provide an objective standard for enforcement. We do not agree. The examples Hahn cites demonstrate that there are different views on the correct interpretation of the statute, but the fact that a statute presents questions of statutory construction that must be resolved by the courts does not mean it is unconstitutionally vague. *See State v. Arnold*, 217 Wis. 340, 345, 258 N.W. 843, 845 (1935). Similarly, the fact that courts may disagree on the construction of a statute does not mean it is unconstitutionally vague. The test for unconstitutional vagueness is not whether reasonable persons, including judges, can in good faith disagree over the meaning of a statute; the test is whether appropriate legal analysis can resolve that disagreement and result in a reasonably definite mean-

ing. We have considered the specific language that Hahn claims is unconstitutionally vague (with the exception of the word "contrivance," for the reasons explained above) and have concluded that it is capable of being construed according to the ordinary principles of statutory construction so as to make its meaning reasonably definite.

*Sufficiency of Evidence*

Hahn argues that the State failed to prove its case beyond a reasonable doubt because it failed to introduce expert testimony to show that video poker machines were "gambling machines," failed to prove that chance predominated over skill, and failed to prove that he knew the monies he received were gambling proceeds.

"An appellant attacking a jury verdict has a heavy burden, for the rules governing our review strongly favor the verdict." *State v. Allbaugh*, 148 Wis. 2d 807, 808–09, 436 N.W.2d 898, 899 (Ct. App. 1989). We affirm the verdict if "the evidence adduced, believed, and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt." *Peters v. State*, 70 Wis. 2d 22, 33, 233 N.W.2d 420, 426 (1975). In reviewing the evidence, we view it in the light most favorable to the verdict, and, if more than one reasonable inference can be drawn from the evidence, we adopt the inference that supports the verdict. *State v. Poellinger*, 153 Wis. 2d 493, 504, 451 N.W.2d 752, 756 (1990). The credibility of the witnesses and the weight of the evidence is for the trier of fact, *id.*, as is the resolution of inconsistencies within a witness's testimony. *See Wirsing v. Krzeminski*, 61 Wis. 2d 513, 525, 213 N.W.2d 37, 43 (1973). Applying this test we

conclude that the evidence is sufficient to support the guilty verdicts beyond a reasonable doubt.[2]

We reject Hahn's argument that expert testimony was necessary to establish that these video poker machines were gambling machines. Although Hahn refers to cases from other jurisdictions in which technical aspects of the machines' functions were at issue, he does not relate those cases to any disputed issue here. The two specific aspects of the definition that Hahn

---

[2] The jury was instructed as follows:

Commercial gambling, as defined in § 945.03(5) of the Criminal Code of Wisconsin, is committed by one who intentionally collects the proceeds of a gambling machine.

Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following two elements are present.

The first element requires that the video poker machines in question were gambling machines.

A "gambling machine" is a device which for a consideration affords the player an opportunity to obtain something of value, the award of which is determined by chance, even though accompanied by some skill and whether or not the prize is automatically paid by the machine.

The phrase "chance, even though accompanied by some skill," means that chance must predominate over skill in determining the outcome of the game.

"Gambling machine" does not include an amusement device which rewards the player exclusively with one or more nonredeemable free replays for achieving certain scores and does not change the ratio or record the number of the free replays so awarded.

The second element requires that the defendant intentionally collected the proceeds of the gambling machines.

This means that the defendant knew that in the alleged time period machine was being used for gambling, and he knew that the proceeds collected were derived from gambling.

If you are satisfied beyond a reasonable doubt that the defendant intentionally collected the proceeds of a gambling machine, you should find the defendant guilty.

If you are not so satisfied, you must find the defendant not guilty.

claims were not proved were that there was a reward and that chance predominated over skill. Expert testimony is necessary only when there are unusually complex or esoteric matters beyond the knowledge of the average juror. *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 382, 541 N.W.2d 753, 758–59 (1995). We are not persuaded that either of these contested issues as they present themselves in this case involve facts and circumstances beyond the common knowledge or ordinary experience of the average juror.

Apart from the challenge to the lack of expert testimony, we do not understand Hahn's argument that there was insufficient evidence of "something of value." Hahn refers to cases from other jurisdictions on the issue of whether "free replays" constitute a sufficient reward. But we are concerned here with the specific wording of our statute. As we explained in the preceding section, we held in *Hahn* that video poker machines that reward a successful player with free replays that are recorded on the machine and for which the player can receive cash from the tavern keeper who expunges the replays with a remote control device, is not excluded as an amusement device under § 945.01(3)(b)2, STATS. We also held that such machines meet the requirement of § 945.01(3)(a) that the machine afford the player the opportunity to obtain something of value. *Hahn*, 203 Wis. 2d 455, 553 N.W.2d at 294. The evidence presented by the tavern owners and the officers at trial is sufficient to prove this portion of the definition of gambling machine beyond a reasonable doubt.

Hahn contends that even if expert testimony is not necessary on the requirement that chance predominate over skill, there was insufficient evidence because the tavern owners and law enforcement officers were not

experienced players, as was Hahn; and, also, even some of them recognized that skill can play a role. However, the issue under the statute is not whether any skill contributes to success, but whether chance predominates over skill. How to weigh the relative experience of the witnesses at playing the game and how to assess their credibility was for the jury to decide. We are satisfied that, if the jury chose to credit the State's witnesses, rather than Hahn, as it was free to do, reasonable jurors could decide that their testimony established this requirement of the definition of gambling machine beyond a reasonable doubt.

Finally, Hahn argues that the evidence does not establish beyond a reasonable doubt that he knew he was collecting money from gambling machines that were being used for gambling and knew the proceeds were derived from gambling. He emphasizes his testimony on his lack of involvement and the paucity of testimony on his direct contacts with the tavern owners. Again, however, a reasonable jury could choose to believe the State's witnesses rather than Hahn, and it apparently did.

■

Hahn was charged as a party to the crime, and the jury was instructed accordingly. There are three alternative ways a defendant can be found liable for the commission of an offense under the party to a crime theory: by aiding and abetting, by conspiracy, or by direct commission of the crime. *State v. Hecht,* 116 Wis. 2d 605, 619, 342 N.W.2d 721, 729 (1984). The testimony of Hintz, Farr and the tavern owners viewed in the light most favorable to the verdict, including the reasonable inferences from that testimony, was sufficient to establish that Hahn knew the money came from gambling machines and knew they were used for

\

gambling. Their testimony that he set up the routes, provided the machines, and trained and paid his employees, together with the reasonable inferences from that testimony, is sufficient to establish that he aided and abetted Hintz in collecting the proceeds of these gambling machines on the dates charged. That evidence could also reasonably be viewed as establishing that he conspired to commit the crimes on the dates charged. A third reasonable view of the evidence is that Hahn himself collected the proceeds on the two dates because he set up the situation that put himself in the position of ultimately receiving the proceeds. Any one of these views of the evidence would permit a reasonable jury to find Hahn guilty beyond a reasonable doubt of collecting proceeds from gambling machines knowing that the machines were being used for gambling and that the proceeds were from gambling.

*Failure to Comply with Discovery Order*

Hahn contends that he was denied a fair trial because the trial court denied his motion to exclude the testimony of witnesses after the State did not comply with the court's discovery order. However, Hahn did not raise these issues by post-verdict motion. He has, therefore, waived the right to raise these issues on appeal. *See Rennick v. Fruehauf*, 82 Wis. 2d 793, 808, 264 N.W.2d 264, 271 (1978) (errors in evidentiary rulings not raised in post-verdict motion are not reviewable as a matter of right). We understand Hahn's argument to be that we should nevertheless use our discretionary power under § 752.35, STATS., to reverse in the interest of justice. We decline to do so because we are satisfied that the interest of justice does not require a new trial.

Before trial, the court issued an order requiring the State to produce, at a reasonable time before trial, all written or phonographically recorded statements of trial witnesses concerning the subject matter of their testimony.[3] Defense counsel did not receive the reports of law enforcement officers until late afternoon on the day before they were to testify, and he did not receive the notes of special agent John Palmer's interview with Farr until the morning of the day Farr and Palmer were to testify. These witnesses had earlier been included on the State's list of witnesses.

With respect to the law enforcement officers, the court gave defense counsel an additional twenty-four hours to review the reports.[4] The next day, after hearing extensive argument, the trial court denied Hahn's request to exclude entirely the testimony of two law enforcement personnel—Krueger and Springer—but did limit their testimony as Hahn requested in the alternative. The court explained in detail its reasons for not excluding all their testimony. First, the court stated that the officers' testimony on the payouts was not new testimony but was corroborative of testimony already provided by Hintz and the tavern owners and was not inconsistent with the defense theory—that Hahn did not know the machines were used for gambling and did not promote such a use. Second, the court found that the State had not intentionally violated the order, observing that the State's conduct was otherwise

[3] The order was entered on September 3, 1992. It stated that it was issued pursuant to §§ 971.23, 971.24 and 971.25, STATS. Those sections have since been consolidated into § 971.23, STATS., 1995–96. *See* 1995 Wis. Act 387, §§ 6–32.

[4] In the interim, the court did not permit any officers to testify except, with defense counsel's agreement, two officers were permitted to testify on very limited points.

conscientious and that, although the prosecutor erroneously advocated that the reports were not witness statements, he had brought the contrary authority to the court's attention. Third, the court concluded that, although the State had violated the discovery order, that order was based on the discovery statutes then in existence, under which statements of witnesses were addressed in a different statute than disclosure of witnesses, with the potential sanction of exclusion of a witness relating to the former but not the latter.[5] That distinction, the court stated, was based on the fact that the purpose of the statements was for impeachment of the witnesses during trial, not discovery. Fourth, the court concluded that the case law favored a continuance over exclusion of witnesses when witnesses had not been disclosed.

---

[5] Section 971.23, STATS., 1991–92 provided:

(3) LIST OF WITNESSES. (a) A defendant may, not less than 15 days nor more than 30 days before trial, serve upon the district attorney an offer in writing to furnish the state a list of all witnesses the defendant intends to call at the trial, whereupon within 5 days after the receipt of such offer, the district attorney shall furnish the defendant a list of all witnesses and their addresses whom he intends to call at trial.

. . . .

(7) . . . The court shall exclude any witness not listed or evidence not presented for inspection or copying required by this section, unless good cause is shown for failure to comply. The court may in appropriate cases grant the opposing party a recess or a continuance.

Section 971.24, STATS., 1991–92 provided:

Statement of witness. (1) At the trial before a witness other than the defendant testifies, written or phonographically recorded statements of the witness, if any shall be given to the other party in the absence of the jury. For cause, the court may order the production of such statements prior to trial.

The imposition of a sanction for a violation of a court's discovery order is within the trial court's discretion. *See State v. Wild*, 146 Wis. 2d 18, 28, 429 N.W.2d 105, 109 (Ct. App. 1988).[6] We affirm discretionary determinations if the court considered the relevant facts, applied the proper standard of law, and, using a demonstrative rational process, reached a conclusion that a reasonable judge could reach. *Rodak v. Rodak*, 150 Wis. 2d 624, 631, 442 N.W.2d 489, 492 (Ct. App. 1989). The trial court's ruling on Hahn's motion to exclude the testimony of Springer and Krueger demonstrates a proper exercise of discretion and provides no basis for a reversal in the interests of justice.

With respect to Farr, the court took Hahn's motion to exclude Farr's testimony under advisement and permitted Farr to testify. The court did not take up the motion again, apparently because Hahn never requested it to. Hahn does not explain in his brief how he was prejudiced by the timing of the production of Palmer's notes with respect to Farr's testimony. We see no reference to the interview in the examination of Farr by either the prosecutor or defense counsel. The notes were never introduced as an exhibit and are not part of the record. There is no basis in the record for

---

[6] We observe that in *State v. Wild*, 146 Wis. 2d 18, 27, 429 N.W.2d 105, 108 (Ct. App. 1988), the applicable statute, § 971.23(7), STATS., 1987–88, required that a witness whose identity was not disclosed under certain circumstances be excluded from testifying, thus limiting the court's discretion in ways explained in the opinion. However, neither party here argues that a statute governs the imposition of sanctions for these violations of the trial court's order.

concluding that the court's decision to permit Farr to testify denied Hahn a fair trial.[7]

*By the Court.*—Judgment affirmed.

[7] Hahn also raises two other instances of the State's failure to comply with the discovery order—it did not timely disclose that its expert witness on the machines was to be John Palmer, rather than James Maida, and it wanted to have Farr show an item to the jury which it had not previously produced for inspection. The court sustained the defense's objections in both instances, ruling that Palmer could not testify as an expert, only as a fact witness, and that Farr could not show the item to the jury. Hahn's argument that these two instances contributed to an unfair trial does not merit discussion.