STATE of Wisconsin, Plaintiff-Respondent,

v.

Isaiah BOWDEN, Defendant-Appellant.

Court of Appeals

*No. 2006AP1127–CR. Submitted on briefs September 25, 2007.
—Decided October 31, 2007.*

2007 WI App 234

(Also reported in 742 N.W.2d 332.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jason R. Farris*, of *Bauer, Farris, & Holloway, LLC.*, of Menasha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Brown, C.J., Anderson, P.J., and Nettesheim, J.

¶ 1. NETTESHEIM, J. A jury found Isaiah Bowden guilty of two counts of interfering with child custody as a repeat offender, contrary to Wis. Stat. §§ 948.31(2) and 939.62(1)(b) (2005–06).[1] Bowden appeals from the ensuing judgment. He argues that the evidence was insufficient for the jury to find that he caused two children to leave their parent without the parent's consent. Based on *State v. Samuel*, 2001 WI App 25, 240 Wis. 2d 756, 623 N.W.2d 565, *rev'd on other grounds*, 2002 WI 34, 252 Wis. 2d 26, 643 N.W.2d 423, we conclude that Bowden's conduct persuaded and manipulated the children such that he caused them to leave their mother within the meaning of § 948.31(2). We affirm.

---

[1] The repeater allegation involved a 1996 conviction for possession with intent to distribute cocaine. All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

¶ 2. The evidence at the jury trial showed the following. Andrew S. and his brother Shawn H. live with their mother, Kim. On November 11, 2003, Andrew and Shawn, then eleven and five years old, were walking home from school when they had to stop to allow a train to pass. Fifty-five-year-old Bowden, a stranger to the boys, crossed the street to where they were waiting and asked if he could walk with them. Bowden showed Andrew a ring and engaged the boys in sports talk. Bowden also gave Andrew a card bearing his name and number so Andrew could call him sometime.

¶ 3. Bowden asked the boys several times to come to his house with him. More than once they said they had to get home. Their mother had a rule that they had to be home by four o'clock. Bowden repeatedly said, "No, come to my house," and the boys eventually went with him. Andrew testified he did not try to run away because he was scared. The house Bowden led them to was not on their route home. Fearful Bowden might hurt them, they went inside with him. The house was the residence of Cindy and Robert Stobbe and Cindy's sister, Sue Mueller. Cindy is a friend of Bowden's girlfriend, Amy Hoffman. Through Hoffman, the Stobbes and Mueller knew Bowden as "Ike."

¶ 4. The Stobbes, Mueller and Hoffman all were in the house when Bowden brought the boys inside. None had ever seen the boys before. Bowden told them the boys were friends he met on the street and he wanted them to "meet my babies." The occupants thought the boys appeared frightened and said the pair "stayed pretty scared" while they were there. Bowden told five-year-old Shawn to kiss the women, but they all refused: Shawn was too afraid and Cindy said he did not have to because they were strangers to him.

¶ 5. Andrew said at least twice that he had to leave because he did not want to get grounded; Bowden kept saying they should stay and he would give them a ride home. At one point, Andrew asked Cindy what time it was; when she told him it was 4:30, he said, "[W]e have to get going, we are late." The various adults estimated the boys were in the house anywhere from ten or twenty minutes to as long as forty-five minutes.

¶ 6. After about the fifth time that Andrew said they needed to go, Bowden told the boys he and Hoffman would take them home and the boys left the house with them. Outside, Bowden gave the boys two basketballs and a drawing board from the trunk of Hoffman's car. Bowden told the boys to get in the car, but Andrew declined, saying they would walk home. Robert Stobbe and Mueller then offered to walk the boys home because they were not sure if Bowden "was going to have any more contact with them." When they arrived at the boys' house, Mueller asked them if she should go inside with them and speak to their parents about the incident. Andrew declined and Mueller advised him to tell their parents what happened. Andrew threw Bowden's card and the items Bowden had given them in the trash.

¶ 7. The State charged Bowden with two counts of interfering with child custody, as a repeater, in violation of Wis. Stat. §§ 948.31(2) and 939.62(1)(b). Specifically, the complaint alleged that Bowden "did cause [the children] to leave the child's parent without consent of the parent." This filing spawned a series of unsuccessful motions. Bowden moved to dismiss the complaint on grounds that § 948.31(2) is unconstitutionally vague and unconstitutional as applied and that the allegations in the criminal complaint were insufficient to establish probable cause. The motions were denied.

¶ 8. Following a bindover at the preliminary hearing, the State filed an information echoing the charge in the complaintcausing the children to leave their parent without the parent's consent. Bowden brought a motion to dismiss the information contending: (1) that the evidence at the preliminary hearing did not establish probable cause;[2] and (2) that WIS. STAT. § 948.31(2), as applied under the facts of the case, was unconstitutionally vague. The trial court denied both challenges. The matter then proceeded to a jury trial. When the State completed its case-in-chief at trial, Bowden moved to dismiss the case on grounds that the facts did not support the crime charged. The court also denied this motion.

¶ 9. The jury found Bowden guilty on both counts. Bowden filed a motion after verdict requesting a new hearing on the constitutionality of WIS. STAT. § 948.31(2), on his failed oral motion to dismiss made after the State's case-in-chief, and on the admissibility of evidence involving the children's statements and demeanor. He also requested a new trial in the interest of justice because the trial court had disallowed a portion of his attorney's closing argument. The court denied the motions.

¶ 10. Bowden's appellate counsel then filed a no-merit report. This court rejected the report on March 6, 2007, and ordered counsel to file a brief on the issues raised in the motions to dismiss.

¶ 11. On appeal, Bowden limits his argument to whether the evidence was sufficient to convict him of the charges. He contends the evidence does not show that he caused the children to leave their mother

---

[2] Bowden brought a similar motion at the close of the evidence at the preliminary hearing. The motion was denied.

because "causes to leave . . . implicitly require[s] the child to be initially in the presence or control of the parent." He also submits that the evidence is insufficient to support the only other viable way to violate WIS. STAT. § 948.31(2), withholding the boys from their mother for more than twelve hours.

¶ 12. WISCONSIN STAT. § 948.31(2) provides in material part:

**948.31 Interference with custody by parent or others.**

. . . .

**(2)** Whoever causes a child to leave, takes a child away or withholds a child for more than 12 hours from the child's parents or, in the case of a nonmarital child whose parents do not subsequently intermarry under s. 767.803, from the child's mother . . . is guilty of a Class I felony.

¶ 13. Under WIS. STAT. § 948.31(2), the Interfering With Custody statute, a person interferes with custody of a parent in one of three ways: (1) causing a child to leave, (2) taking a child away, or (3) withholding a child for more than twelve hours. *Samuel*, 240 Wis. 2d 756, ¶ 27. This case was charged and tried under the first scenario, that Bowden caused Andrew and Shawn to leave their mother.

■■■■■

¶ 14. A conviction can stand only if the evidence at trial was sufficient to convict on the theory presented to the jury. *Id.* We affirm the verdict if "the evidence adduced, believed and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt." *State v. Hahn*, 221 Wis. 2d 670, 683, 586 N.W.2d 5 (Ct. App. 1998) (citation omitted). We

review the evidence in the light most favorable to the verdict and, if the evidence permits drawing more than one reasonable inference, we draw the one that supports the verdict. *State v. Poellinger*, 153 Wis. 2d 493, 504, 451 N.W.2d 752 (1990). The credibility of the witnesses, the weight of the evidence, and resolving inconsistencies in a witness's testimony all are for the trier of fact. *Hahn*, 221 Wis. 2d at 683. Because the rules governing our review strongly favor a jury verdict, the challenger of a verdict has a heavy burden. *Id.*

¶ 15. The State had to prove three elements: that both Andrew and Shawn were under eighteen, that Kim was their mother, and that Bowden caused Andrew and Shawn to leave Kim without her consent. *See* WIS. STAT. § 948.31(2). Only the "causes to leave" element was disputed.

¶ 16. A defendant causes a child to leave a parent if the defendant is responsible for or brings about an "abandoning, departing or going away from" the parent. *Samuel*, 240 Wis. 2d 756, ¶ 37. "Causes to leave" suggests the defendant engages in some sort of mental, rather than physical, manipulation by doing things to persuade the child to leave the parent. *Id.* Force or violence is unnecessary and the conduct need not be intentional. *See* WIS JI—CRIMINAL 2167 and n.7.

¶ 17. Bowden essentially argues that he could not have caused the children to leave their mother because the boys were not with her when the incident occurred. He contends that the statutory language, "withholds a child for more than 12 hours," supports his logic. This method of interference, he argues, shows that the legislature contemplated situations where the child is not with the parent so, implicitly, the other two meth-

ods of interference must apply only to those situations where the child initially *is* with the parent.

¶ 18. The State posits that the withholding method of interference focuses on permission, not being in the parent's presence. We agree. The withholding method addresses a situation where the person who takes the child has some initial permission to do so. The other two methods speak to situations where the parent has given no permission to the person who "causes a child to leave" or "takes a child away." *See* WIS. STAT. § 948.31(2). Bowden's argument that "causes . . . to leave" means from the parent's actual presence suggests that parental custody ends when the child is out of the parent's presence. Without commenting on the merit of that position, to adopt it would require that we add words to the statute that are not there. We decline to do so. *See Samuel*, 240 Wis. 2d 756, ¶ 35.

¶ 19. Reviewing the evidence in the light most favorable to the verdict, we conclude that Bowden caused the boys to leave their mother within the meaning of the statute. Bowden approached the boys, drew them into conversation by means aimed at disarming children and, despite being told they had to go home, insisted they deviate from their route and follow him. The boys complied out of fear, a fear that was evident to the four occupants of the house. The brothers reiterated their mother's rule about being home on time and that they would be grounded. Bowden overrode their resistance and persuaded them to act counter to their mother's directives and authority. It is undisputed that their mother neither gave the boys permission to deviate from this directive nor Bowden permission to cause the boys to deviate from it. Regardless of whether Bowden's conduct was sweetened with sports

talk and basketballs, it amounts to mental manipulation of a child by doing things to persuade the child to leave the parent. *See Samuel*, 240 Wis. 2d 756, ¶ 37.

¶ 20.　Bowden observes that his trial counsel cast this as a case of disobedient children being tardy. He asserts here that the State produced "no real evidence" of dubious motive on his part and wonders in passing whether, under the State's theory, taking the child to a movie of which the parent did not approve would be charging conduct. This line of argument goes nowhere. This was not an instance of dallying children who defied their mother's wishes. There was nothing mutual about the figurative and literal detour from the parent's authority. Rather, this was an instance of an adult stranger luring children from their designated journey home contrary to the directives and without the knowledge of a parent. The jury heard that even Robert Stobbes and Mueller, who were acquainted with Bowden, were unsure enough of Bowden's intentions toward the boys to walk them home and advise them to tell their parents. The evidence was sufficient to show that Bowden caused the children to leave a parent.

¶ 21.　Finally, beyond posing the question, Bowden leaves undeveloped the argument about the statute's intended stopping point or constitutional vagueness; we therefore need address it no further. *See Barakat v. DHSS*, 191 Wis. 2d 769, 786, 530 N.W.2d 392 (Ct. App. 1995).

　*By the Court.*—Judgment affirmed.