WISCONSIN LABEL CORPORATION, Plaintiff-Appellant,†

v.

NORTHBROOK PROPERTY & CASUALTY INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 98–0194. Submitted on briefs June 29, 1998.—Decided September 9, 1998.*

(Also reported in 586 N.W.2d 29.)

†Petition to review filed.

802

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *George Burnett* of *Liebmann, Conway, Olejniczak & Jerry, S.C.* of Green Bay.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Susan R. Tyndall* of *Hinshaw & Culbertson* of Milwaukee.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J. Wisconsin Label Corporation appeals a summary judgment dismissing its lawsuit seeking liability coverage from its insurer, Northbrook Property and Casualty Insurance Company. Wisconsin Label claims that its mislabeling of a promotional package for its customer, Personal Products Company, resulted in "property damage" within the meaning of Northbrook's comprehensive general liability policy and that the policy's "impaired property exclusion" does not apply.

Wisconsin Label argues that: (1) the mislabeling caused property damage under the policy because "physical property damage" or "loss of use of tangible property that was not physically injured" occurred; and (2) the "impaired property" exclusion is inapplicable because: (a) the product defect could not be repaired after it reached the consumer, and (b) the product's mislabeling was a "sudden and accidental injury." We reject these arguments and affirm the trial court's judgment.

## I. Background

The parties stipulated to the following facts. Before October 1992, Wisconsin Label acquired the assets of Ameripac, an Illinois corporation. After the acquisition, Northbrook issued a comprehensive general liability (CGL) policy to Ameripac. In October 1992, Ameripac contracted with the Personal Products Company (PPC) to assemble a Stay Free/Care Free maxi-pad/panty-shield promotional package. The promotional package consisted of one box of Stay Free and one box of Care Free wrapped together in a single package for future sale at Wal-Mart retail stores.

PPC wanted consumers who purchased the promotional package to receive the Care Free panty-shields at no extra cost; therefore, PPC asked Ameripac to completely cover the UPC bar codes on both the Stay Free and Care Free products and replace them with a new UPC label. When scanned at Wal-Mart, the new UPC label was to reflect the price of only the Stay Free maxi-pads.

After PPC's promotional campaign began, Wal-Mart claimed that, on a number of the promotional packages, Ameripac had failed to properly cover the old UPC bar code on the less expensive Care Free panty-shields. As a result, Wal-Mart claimed that it had scanned many of the promotional packages at an incorrect, lower price.[1] Wal-Mart made a claim against PPC for approximately $200,000 for the incorrect labeling; this amount reflects undercharges from the improper UPC bar codes and Wal-Mart's costs to inspect and

---

[1] When scanned, the new UPC label, which was to replace the existing UPC bar codes on the two boxes, should have scanned the price of the promotional package as $2.47, the cost of the maxi-pads, and not $1.16, the panty-shields' price.

relabel the remaining unsold promotional packages. PPC then sought damages from Ameripac/Wisconsin Label for its own losses ($25,000), as well as for the $200,000 it had paid to Wal-Mart. Since that time, PPC has withheld payment on Ameripac's invoices; these invoices, totaling approximately $125,000, reflect the work Ameripac contracted with PPC to perform.

Wisconsin Label tendered the claim to its insurer, Northbrook. Northbrook denied the claim, stating that no property damage occurred and that even if property damage did occur, the "impaired property exclusion" precludes coverage. Wisconsin Label filed suit seeking a declaration of coverage and damages. Northbrook moved for summary judgment. The trial court granted the motion. Wisconsin Label appeals.

## II. STANDARD OF REVIEW

We review a trial court's summary judgment de novo, but we nonetheless value a trial court's decision on such a question. *M&I First Nat'l Bank v. Episcopal Homes Mgmt.*, 195 Wis. 2d 485, 496–97, 536 N.W.2d 175, 182 (Ct. App. 1995). Whether the trial court properly granted summary judgment is a question of law. *Id.* In making this determination, we apply the same methodology as the trial court. *Id.* Because summary judgment methodology is well known, we need not repeat it "except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing § 802.08(2), STATS.).

Summary judgment may be used to address insurance policy coverage issues. *Link v. General Cas. Co.*, 185 Wis. 2d 394, 398, 518 N.W.2d 261, 262 (Ct. App.

1994). In this case, the parties stipulated to the material facts, but disagree on the interpretation of the insurance policy Northbrook issued to Ameripac/Wisconsin Label. Therefore, we may properly decide this case on summary judgment. *See id.*

The interpretation of an insurance policy is a question of law this court reviews de novo, and we apply the same rules of construction that we apply to contracts generally. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 810, 456 N.W.2d 597, 598 (1990). In interpreting the policy, our objective is to determine the parties' true intentions. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984). We must give an insurance policy's language its common and ordinary meaning; moreover, we construe the language as would the reasonable person in the position of the insured. *Cieslewicz v. Mutual Serv. Cas. Ins. Co.*, 84 Wis. 2d 91, 97–98, 267 N.W.2d 595, 598 (1978).

An insurance policy is ambiguous if the language when read in context is fairly or reasonably susceptible to more than one construction. *See Sprangers v. Greatway Ins. Co.*, 182 Wis. 2d 521, 536–37, 514 N.W.2d 1, 6 (1994). We resolve ambiguities in an insurance policy against the insurer and in favor of the insured. *See Garriguenc v. Love*, 67 Wis. 2d 130, 135, 226 N.W.2d 414, 417 (1975). Whether ambiguities exist is a question of law. *See Western Cas. & Surety Co. v. Budrus*, 112 Wis. 2d 348, 351, 332 N.W.2d 837, 839 (Ct. App. 1983).

When no ambiguities exist and the policy's terms are plain on their face, we will not rewrite the policy by

construction. *Limpert v. Smith,* 56 Wis. 2d 632, 640, 203 N.W.2d 29, 33 (1973). By contrast, we will apply the policy terms. *See Budrus,* 112 Wis. 2d at 351, 332 N.W.2d at 839. While provisions, conditions, and exceptions tending to limit liability are strictly construed against the insurer, we "will not, under the guise of strict construction . . . rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid." *Bankert v. Threshermen's Mut. Ins Co.,* 105 Wis. 2d 438, 444–45, 313 N.W.2d 854, 857 (Ct. App. 1981).

## III. ANALYSIS[2]

Northbrook's general commercial liability policy states that it will pay "those sums that the Insured becomes legally obligated to pay as damages because of bodily injury or *property damage* to which this insurance applies." (Emphasis added.) Northbrook's policy

[2] On motions in limine, Wisconsin Label argued that Wisconsin law applies to this case, but Northbrook argued that Illinois law applies. In its decision, the trial court noted that Northbrook conceded that Illinois and Wisconsin law are identical regarding the substantive issue. The trial court did not address the conflict of law issue, but analyzed the issue exclusively under Wisconsin law. Both parties mention, but do not argue, the conflict of law issue in their main briefs, and Wisconsin Label argues the conflict issue by footnote in its reply brief. We will not address an issue raised for the first time in a reply brief. *Hogan v. Musolf,* 157 Wis. 2d 362, 381 n.16, 459 N.W.2d 865, 873 n.16 (Ct. App. 1990), *rev'd on other grounds,* 163 Wis. 2d 1, 471 N.W.2d 216 (1991). We will therefore apply Wisconsin law, and when necessary, use case law from other jurisdictions as persuasive authority.

Further, because Wisconsin law provides a sufficient basis for our analysis, we do not address the Illinois cases Northbrook cites in its brief.

"applies to any bodily injury or property damage only if: (1) the bodily injury or property damage is caused by an occurrence . . . (2) The bodily injury or property damage occurs during the policy period." The policy defines "property damage" as follows:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence that caused it.

## A. "Physical injury"

Wisconsin Label argues that physical property damage occurred because: (1) the mislabeling diminished the value of Wal-Mart and PPC's property; and (2) the mislabeling "required physical measures to repair." It contends that the packaging failed one of its functions[3] —to communicate the price to cash register clerks. Wisconsin Label asserts that the trial court never addressed how physically uninjured property can nevertheless require physical repair.

The "occurrence" under the policy in this case is the mislabeling of the promotional packages. The alleged injury is that the packaging that Wisconsin Label provided to PPC under contract "needed to be repaired." Because we discern no ambiguity in the policy's phrase "physical injury to tangible property," we will apply the policy's terms. *See Budrus*, 112 Wis. 2d

---

[3] Wisconsin Label states that the packaging served to protect the product inside, identify the product's manufacturer, and communicate the price to cash register clerks.

at 351, 332 N.W.2d at 839. Giving "physical injury" its common and ordinary meaning, *Kremers-Urban Co.*, 119 Wis. 2d at 735, 351 N.W.2d at 163, we agree with Northbrook that a reasonable insured would construe "physical injury" as meaning some physical damage to the property.

■

Here, the mislabeling did not result in any physical injury to the promotional products or their packaging. The fact that the packaging had to be relabeled does not mean that physical injury occurred in the first instance. The lost profits for which Wisconsin Label seeks recovery in its complaint are economic losses for its failure to comply with the terms of its contract with PPC. Economic losses are not property damage within the "physical injury" provision of the definition of property damage.[4] *See Qualman v. Bruckmoser*, 163 Wis. 2d 361, 366–68, 471 N.W.2d 282, 285–86 (Ct. App. 1991) (breach of contract and misrepresentation case stating that economic losses do not constitute "physical injury to . . . tangible property").[5]

---

[4] Wisconsin Label argues that *Sola Basic Ind. v. USF&G*, 90 Wis. 2d 641, 654, 280 N.W.2d 211, 217 (1979), holds that economic losses are covered property damage under a CGL policy. *Sola Basic*, however, specifically noted that the damages did not "represent lost profits," but were a "diminution to the value of the plant caused by the malfunctioning transformer." *Id.* Of particular note, no physical injury to tangible property was alleged. *Id.* Sola Basic made no claim for the cost of removing and building the transformer. *Id.*

[5] In its reply brief, Wisconsin Label argues that *Qualman v. Bruckmoser*, 163 Wis. 2d 361, 471 N.W.2d 282 (Ct. App. 1991), is inapplicable because the defects in Qualman's real estate did not cause the buyer's damages and because the defects preceded the occurrence. Here, there was no "defect" in the label or the promotional products, only improper placement of the labels.

To support its argument that the mislabeling caused physical injury, Wisconsin Label relies entirely on *Eljer Mfg. v. Liberty Mut. Ins. Co.*, 972 F.2d 805 (7th Cir. 1992). Wisconsin Label asserts that, under *Eljer*: (a) physical injury occurs "when a defective work or component" is incorporated into another product and must be repaired at some cost to prevent future loss, and (b) the likelihood of future physical injury to tangible property is enough to invoke CGL coverage. *Eljer* is distinguishable from this case, however, and provides no basis for this court to find coverage under Northbrook's policy.

Unlike the defective plumbing systems in *Eljer*, here the labels were not defective in and of themselves, so there was no incorporation of a "defective work or component." Rather, the *correct labels* were simply *put in the wrong place* and did not properly cover the old bar codes. As a result, Wal-Mart received half the correct price on some of the promotional packages and suffered lost profits. Further, there was no possibility of future physical injury here because the only injury that the improperly placed labels could potentially inflict was lost profits—economic loss.

Wisconsin Label also argues that *Qualman* stands for the proposition that the actionable event, the occurrence, must cause property damage. We agree. Here, Wisconsin Label's complaint does not allege that the mislabeling caused physical damage to the promotional products, but that "there was property damage because the Product quantities ultimately shipped to Wal-Mart were diminished in value *because of the UPC over-label errors*." (Emphasis added.) In other words, because Wisconsin Label failed to execute its contract with PPC in accordance with its terms, Wal-Mart and PPC lost profits. Because the mislabeling did not physically injure the products, no physical damage occurred under the "physical injury" provision.

A reasonable insured in Wisconsin Label's position, *see Cieslewicz*, 84 Wis. 2d at 97–98, 267 N.W.2d at 598, would not associate *physical* injury with economic loss. We refuse to rewrite the policy by construction to bind Northbrook to a risk the parties did not contemplate. *See Bankert*, 105 Wis. 2d at 444–45, 313 N.W.2d at 857.

We next address Wisconsin Label's argument that physical damage to property occurred because the mislabeling error diminished the value of Wal-Mart and PPC's property. Reading its argument broadly, we assume that Wisconsin Label reasons that the language "including loss of its use" in the definition of "physical damage to property" means that no physical damage is required. Simply put, the argument is that loss of use of tangible property constitutes "physical damage" under the policy.

This court previously rejected this interpretation in *Ehlers v. Johnson*, 164 Wis. 2d 560, 476 N.W.2d 291 ( Ct. App. 1991). In *Ehlers*, we concluded that, as used in the definition of "physical injury," the phrase "including loss of use" was unambiguous and that its only reasonable interpretation is that it defines property damage to include loss of use as a result of physical damage.[6] *Id.* at 564, 476 N.W.2d at 293. Thus, without

---

[6] In *Ehlers v. Johnson*, 164 Wis. 2d 560, 564, 476 N.W.2d 291, 293 (Ct. App. 1991), we noted that:

> The loss of use clause is introduced by the verb "including." The dictionary defines "including" as "to take in or comprise as part of a whole . . . ." The loss of use clause is thus introduced as a subset of "physical injury to or physical destruction of tangible property." If the loss of use clause were interpreted as the [insureds] would have it, i.e., as any nonphysical injury to tangible property, the definition of property damage would effectively read: "physical injury to . . . tangible property, including non-physical injury." We reject such a contradictory reading.

physical damage in this case, there can be no loss of use under the "physical injury" provision. *Id.*

## B.   "Loss of use to tangible property not physically injured"

Because there is no physical damage to tangible property under the policy, Wisconsin Label must show "loss of use to tangible property not physically injured" to demonstrate coverage. As this policy provision reflects, the term "property damage" does not necessarily require physical damage. *Sola Basic Ind. v. USF&G*, 90 Wis. 2d 641, 653–54, 280 N.W.2d 211, 217 (1979). *Rather, tangible property may be damaged if "diminished in value or made useless,"* even if the tangible property suffers no actual physical injury. *Id.* (emphasis added); *see also* ARNOLD P. ANDERSON, WISCONSIN INSURANCE LAW, § 5.17, at 5–49 to 51 (4th ed. 1998) (discussing *Sola Basic* & noting same). As discussed below, because the mislabeling neither diminished the value of the products and packaging nor rendered them useless, Northbrook's policy does not cover the loss.

The uselessness requirement originates in *Sola Basic*, 90 Wis. 2d at 644, 280 N.W.2d at 212. Sola Basic sold a transformer to Thunder Bay Manufacturing Corporation for use in its manufacturing process. *Id.* When the transformer malfunctioned, Sola Basic repaired the transformer. *Id.* Thunder Bay alleged that Sola Basic's negligent performance of the repair damaged the transformer's windings. *Id.* As a result of the negligent repair, Sola Basic had to use another method while the transformer was being repaired; this method increased Thunder Bay's operating expenses. *Id.* Sola Basic removed and rebuilt the transformer at its own

expense but did not make a claim to its insurer for that expense. Sola Basic's insurer denied coverage for the increased cost of operation, however. *Id.* The *Sola Basic* court reviewed case law from other jurisdictions and concluded that tangible property may be damaged if "diminished in value or *made useless*" irrespective of physical injury. *Id.* at 653–54, 280 N.W.2d at 217 (emphasis added). In holding that coverage existed, the *Sola Basic* court stated that the removal of the damaged transformer "rendered useless" Thunder Bay's electric furnaces, causing it to incur additional operational expenses. *Id.* at 654, 280 N.W.2d at 217.

Other Wisconsin cases have followed *Sola Basic*'s uselessness requirement.[7] In *Budrus*, a farmer planted a forty-acre field with mistagged seed, and by the time

---

[7] Wisconsin Label cites *United States Fire Ins. Co. v. Good Humor Corp.*, 173 Wis. 2d 804, 496 N.W.2d 730 (Ct. App. 1993), for the proposition that coverage under a CGL policy may exist for the cost of repackaging defective goods, for advertising and promotional costs, and for the cost of collecting, transporting, and storing a defective product. Wisconsin Label gives no pinpoint citation to the case. Our review of *Good Humor* finds no such suggestion. The opinion merely lists the alleged damages and notes that "loss of use of storage space caused by . . . collection of the recalled product is one example of a loss of use of tangible property that is property damage caused by an occurrence." *Id.* at 824, 496 N.W.2d at 737. It then concluded that the claim was fairly debatable. *Id.* The issue in *Good Humor* was whether the insurer had a duty to defend, not whether there was coverage. Wisconsin Label's complaint does not allege "loss of use" or loss of storage space.

Wisconsin Label also cites *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808 (3d Cir. 1994). Lucker avoided incorporating defective castings into an anchor and sought to recover damages for loss of use. *Id.* at 810–11. Here, the labels were not defective, but misplaced. Further, *Lucker* is not binding authority. In our

the farmer discovered the error, it was too late to replant. *Id.* at 350, 332 N.W.2d at 839. The farmer claimed damages for loss of use of the field because the mistagged seed was of "no value to him." *Id.* Like the furnaces in *Sola Basic*, the field was rendered useless to the farmer.

*Trio's, Inc. v. Jones Sign Co.*, 151 Wis. 2d 380, 382–84, 444 N.W.2d 443, 444–45 (Ct. App. 1989), also discusses the uselessness requirement. In *Trio's*, a sign company negligently manufactured a restaurant sign. *Id.* While the court found that the loss of use from a defective sign fell within the policy's exclusion for "Property Damage to the Named Insured's Products," the case is valuable because the *Trio's* court distinguished its case from *Sola Basic*. *Id.* The *Trio's* court noted that Trio's did not allege that the malfunctioning sign rendered part of the building useless. *Id.* at 384, 444 N.W.2d at 445. The court specifically pointed out that in *Sola Basic*, unlike in its case, the furnaces were rendered unusable. *Id.*; *see also* ANDERSON, *supra*, § 5.31, at 5–114 to 115.

Wisconsin Label stresses that Northbrook's policy does not require complete uselessness, but only some loss of use, and that if Northbrook wanted to require complete uselessness, the policy should so provide. Case law interpreting loss of use to non-physically damaged property provides otherwise. Under *Sola Basic* and its progeny, Wisconsin Label must show that its promotional products were rendered useless. *Id.* at 654, 280 N.W.2d at 217. Here, the products themselves were still entirely useable, and therefore, Wisconsin Label fails to meet the uselessness requirement.

opinion, *Good Humor* and *Lucker* provide little guidance to the resolution of this issue.

We next address Wisconsin Label's argument that coverage exists because the goods were diminished in value. In its complaint, Wisconsin Label states that there was "property damage because the product quantities ultimately shipped to Wal-Mart were *diminished in value* because of the UPC over-label errors." (Emphasis added.) Wisconsin Label's characterization of its losses does not change the fact that it seeks damages from its failure to perform its contract with PPC. The products and the packaging themselves were not diminished in value. By contrast, the incorrect labels caused the check-out clerks to ring up the wrong price. Because the incorrect labels did not change the character of the product, but merely caused lost profits, Wisconsin Label's argument fails. Lost profits do not constitute a diminution in value. *See Sola Basic*, 90 Wis. 2d at 654–55, 280 N.W.2d at 217; *see also Qualman*, 163 Wis. 2d at 366–68, 471 N.W.2d at 285–86.

Wisconsin Label argues that *Sola Basic* stands for the proposition that Northbrook's policy covers purely economic losses to non-physically damaged property. To bolster this assertion, Wisconsin Label points out that *Benjamin v. Dohm*, 189 Wis. 2d 352, 364, 525 N.W.2d 371, 376 (Ct. App. 1994), described *Sola Basic* as a suit in which the policy covered "economic losses" to non-physically injured property. Notably, however, in concluding that the policy covered the loss, the *Sola Basic* court specifically stated that such *costs did not represent lost profits*, but were "a measure of the diminution to the value of the plant caused by the malfunctioning transformer." *Id.* at 654, 280 N.W.2d at 217. For these reasons, the policy does not cover the lost profits in this case.

Because there is no property damage under the policy, we need not address whether the "impaired property exclusion" likewise precludes coverage. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1993).

*By the Court.*—Judgment affirmed.