STATE of Wisconsin, Plaintiff-Respondent,

v.

Louis D. THOMAS, Defendant-Appellant.†

Court of Appeals

*No. 03–1369–CR. Submitted on briefs March 2, 2004.—Decided May 18, 2004.*

2004 WI App 115

(Also reported in 683 N.W.2d 497.)

---

† Petition to review denied 9-20-04.

---

SCHUDSON, J., concurs.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Joseph L. Sommers*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general and *Jeffrey J. Kassel*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. WEDEMEYER, P.J. Louis D. Thomas appeals from a judgment of conviction entered after a jury found him guilty of felon in possession of a gun, but not guilty of carrying a concealed weapon. He claims: (1) article I, section 25 of the Wisconsin Constitution effectively repealed Wis. Stat. § 941.29 (2001–02);[1] (2) section 941.29 is unconstitutionally vague, overbroad, and violates the equal protection clause of the United States and Wisconsin Constitutions; and (3) he is entitled to a new trial in the interest of justice because the verdicts were inconsistent. Because there was no constitutional infirmity in the presentation of this case and

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

because there is no entitlement to a new trial in the interest of justice, we affirm.

## I. BACKGROUND

¶ 2. On November 19, 2001, at approximately 9:25 p.m., Police Officer Ryan Heidemann, while on patrol in an unmarked squad car, received a "shots fired" dispatch to North 8th Street and West Concordia Avenue in Milwaukee, Wisconsin. The dispatcher informed him that a brown four-door vehicle was involved in the reported incident and that its occupants might be armed. While en route to the scene, he observed a brown wood-grained station wagon with two occupants and he began to follow the vehicle. The station wagon pulled over to the curb at approximately 831 West Ring Street. Heidemann stopped his squad car approximately two car lengths behind the station wagon. The station wagon's driver immediately exited the vehicle and walked away. Heidemann turned on his squad car's bright lights and activated the squad's spotlight. He also called for backup.

¶ 3. In short order, the passenger, later identified as Thomas, exited on the passenger side of the station wagon. While still seated in the squad car, Heidemann observed Thomas walk towards the back of the station wagon on the curb side, reach into the front waistband of his pants, and pull out a black handgun. Heidemann exited the squad with his service gun drawn. He observed Thomas throw the handgun under the station wagon. Thomas was arrested and charged with being a felon in possession of a gun and carrying a concealed weapon. Thomas stipulated that he had previously been convicted of fleeing, which is a felony. After a jury trial, Thomas was convicted of the former charge, but acquitted of the latter charge. Before sentencing, Thomas

filed a series of motions challenging the constitutionality of WIS. STAT. § 941.29. The trial court denied all of his motions. Thomas now appeals.

## II. ANALYSIS

¶ 4. Thomas raises several claims of error: (1) the felon-in-possession statute, WIS. STAT. § 941.29, is unconstitutional under Wisconsin's right-to-bear-arms amendment, WIS. CONST. art. I, § 25; (2) the statute is unconstitutionally vague and overbroad; (3) the statute violates the equal protection clause; and (4) he is entitled to a new trial because the verdicts convicting him of felon-in-possession of a firearm and acquitting him of the carrying a concealed weapon count are inconsistent. For reasons that follow, we reject each of his claims of error.

### A. CONSTITUTIONALITY OF THE STATUTE

¶ 5. WISCONSIN STAT. § 941.29(1)(a) and (2) became effective on March 31, 1982.[2] In 1998, the Wisconsin Constitution was amended to provide that, "[t]he people

---

[2] On November 19, 2001, the date of Thomas's offense, WIS. STAT. § 941.29, in pertinent part, read:

**Possession of a firearm. (1)** A person is subject to the requirements and penalties of this section if he or she has been:

(a) Convicted of a felony in this state.

. . . .

**(2)** A person specified in sub. (1) is guilty of a Class E felony if he or she possesses a firearm under any of the following circumstances:

(a) The person possesses a firearm subsequent to the conviction for the felony . . . .

The statute was amended by 2001 Wis. Act 109 to reclassify the offense as a Class G felony.

have the right to keep and bear arms for security, defense, hunting, recreation or any other lawful purpose." WIS. CONST. art. I, § 25.

¶ 6. Thomas contends legislative history clearly demonstrates that with the passage of this constitutional amendment, WIS. STAT. § 941.29 has been knowingly and effectively repealed. Legislative history, however, demonstrates his conclusion is fatally flawed.

¶ 7. Thomas asserts that article I, section 25: "establishes a broad and fundamental right to bear arms, including firearms. The lawful purposes expressly delineated in this amendment include security, defense, hunting, recreation and other lawful purposes." He then argues that "[t]here is nothing in the amendment that indicates that any of those enumerated purposes are [sic] reserved for non-felons only . . . ." He continues, "the constitutional right, as written, is altogether unqualified by any language preserving preexisting legislation." Thus, he concludes, "were Art. I, Sec. 25 . . . meant to have preserved preexisting restrictions against possession of a firearm by a felon, the legislature would have so drafted it."[3]

---

[3] He marshals support for this contention by referring to three examples: (1) article XIV, section 13 of the Wisconsin Constitution, which restricts the continuation of common law by the language, "until altered or suspended by the legislature"; (2) the restrictions placed on granting victims' rights under article I, section 9m of the Wisconsin Constitution by the language, "[n]othing in this section, or in any statute enacted pursuant to this section, shall limit any rights of the accused which may be provided by law"; and (3) the constitutional proscription of article I, section 18 of the Wisconsin Constitution against the expenditures of monies in violation of the doctrine of separation of church and state is limited to allow for

¶ 8. There are three reasons to reject Thomas's interpretation of article I, section 25. The first is based upon Thomas's inaccurate historical methodology. Thomas bases his unrestricted reading of article I, section 25 on the presumption that the following language appeared in a draft version of the constitutional amendment:

> Every *individual*, <u>except an individual restricted in accordance with *state and federal law*</u>, has the right to keep and bear arms for any lawful purpose including for security or defense, for hunting for recreation use, except that the manner of bearing arms may be regulated in accordance with state law.

(Underlining in original; emphasis added.) Thomas claims that this was the original text of the Bear Arms Amendment as introduced on September 1, 1995, as Assembly Joint Resolution 53 (AJR 53). Unfortunately for the persuasive weight of Thomas's argument, his source—Christopher R. Mcfadden, *The Wisconsin Bear Arms Amendment and the Case Against an Absolute Prohibition on Carrying Concealed Weapons,* 19 N. ILL. U. L. REV. 709, 716 (1999)—misquoted AJR 53. The phrase "state law" never appeared in any version of AJR 53. Thus, Thomas's argument that the later deletion of the phrase "state law" demonstrated the legislative intent to repeal state law restrictions is incorrect.

¶ 9. Second, on November 29, 1995, the Assembly Committee on Elections and Constitutional Law amended the proposed constitutional amendment to delete reference to "Federal Law." At that stage in the legislative process the proposed constitutional amend-

the public transportation to parochial schools and the use of public buildings by religious or charitable organizations.

ment read, "Every individual has the right to keep and bear arms for any lawful purposes including for security or defense, for hunting and for recreational use." The purpose of deleting the federal exception was to prevent the implied interpretation that "the only valid restrictions on the possession [of] firearms in Wisconsin would be those restrictions imposed by federal law." Amendments to AJR 53. As urged by Representative Scott Jensen, the language should be deleted because "Wisconsin should not surrender its authority to regulate firearms to the federal government." Wisconsin Legislative Council Staff Memorandum, Explanation of 1997 Assembly Joint Resolution 11, Relating to the Right to Keep and Bear Arms (Second Consideration) 3 (Jan. 22, 1997) ("1997 Legislative Council memo"). This deletion and explanation therefore suggest that the legislature did not intend to repeal Wis. Stat. § 941.29 when passing the constitutional amendment.

¶ 10. Third, when AJR 53 was originally introduced, it set forth, *Every individual,* except an individual restricted in accordance with federal law, has the right to keep and bear arms . . . ." A second amendment to the wording of the proposed amendment substituted, *"The people"* for *"Every individual"*:

> . . . Assembly Substitute Amendment 1 substituted the phrase "The people" for the phrase "Every individual" in order to avoid a possible construction of the constitutional amendment that would preclude the Legislature, in the exercise of its inherent police *power to enact laws that limit or infringe upon the right to keep and bear arms, from restricting the possession and use of arms by certain individuals (e.g., convicted felons) in the interest of protecting the health, safety or welfare of the public.*

*See* 1997 Legislative Council memo at 2 (emphasis added).

¶ 11. In addition, the very law review article Thomas cites summarized the position of the amendment's proposers:

> Taken as a whole, the statements of [Representative Scott] Jensen, [Senator David] Zien, and others solely assured citizens that the Bear Arms amendment would not affect two types of statewide restrictions: (1) the state's 48–hour waiting period to obtain firearms; and (2) its prohibition against gun ownership and possession by convicted felons.

McFadden, 19 N. ILL. U. L. REV. at 729.

¶ 12. Contrary to Thomas's assertions, the legislative history of the amendment clearly demonstrates that the intent of the sponsors of the amendment was to preserve the legislature's authority to restrict the possession of firearms by felons. Thus, this claim of error fails.[4]

### B. UNCONSTITUTIONALLY VAGUE AND OVERBROAD

¶ 13. Second, Thomas contends that the felon-in-possession statute is unconstitutionally vague and overbroad. We shall examine each claim in turn.

### 1. Vagueness

¶ 14. The underlying basis for a vagueness challenge to a statute is the procedural due process requirement of fair notice. *State v. Ehlenfeldt*, 94 Wis. 2d 347,

---

[4] We note that Thomas did not reply to the State's presentation of the legislative history of article I, section 25 preserving the legislature's authority to restrict the possession by felons. *See Charolais Breeding Ranches, Ltd. v. FPC Sec.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (analysis not refuted is deemed conceded).

355, 288 N.W.2d 786 (1980). A statute is unconstitutionally vague if it either fails to afford proper notice of the prohibited conduct or fails to provide an objective standard for enforcement. *State v. Smith*, 215 Wis. 2d 84, 91, 572 N.W.2d 496 (Ct. App. 1997). "In order to give proper notice, a criminal statute must sufficiently warn people who wish to obey the law that their conduct comes near the proscribed area." *State v. Hahn*, 221 Wis. 2d 670, 677, 586 N.W.2d 5 (Ct. App. 1998). We will not declare a statute to be unconstitutional on vagueness grounds " 'if any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to other definable sources.' " *State v. Lo*, 228 Wis. 2d 531, 536, 599 N.W.2d 659 (Ct. App. 1999) (citation omitted).

¶ 15. The basis for Thomas's vagueness challenge is two-pronged. First, he claims that the continued existence of WIS. STAT. § 941.29 after the ratification of article I, section 25, fails to provide a fair or reasonable notice "of the kind of activity that is prohibited in the fact of fundamental law, stating in unequivocal and unqualified terms otherwise." Second, he asserts that the "citizenry themselves voted for a broad unqualified right to keep and bear arms." Thus, he reasons, "[o]ne would logically assume from the amendment, that as long as a felon was bearing the firearm for a lawful purpose, that he or she was within his or her legal rights." This argument fails for two reasons.

■■■

¶ 16. First, the right to bear arms is a qualified right, subject to reasonable restrictions under the state's police power. *See United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001). Second, because there is no basis to assume that the right is "unqualified," there is likewise no basis for a felon to assume that as long as

he or she is bearing a firearm for a lawful purpose, he or she is within his or her lawful right to bear the firearm.

¶ 17. Next, Thomas argues that the felon-in-possession statute fails to provide sufficient enforcement standards. To prove his point, he presents two hypothetical examples of felons bearing a firearm. The first example is that of an uninformed well-intended out-of-state hunter who, seeking to provide food for his family, is not arrested by local sympathetic law enforcement authorities. The second example is that of an inner-city youth, familiar with the amendment, carrying an automatic revolver for protection in a gun-troubled neighborhood who is prosecuted.

¶ 18. Here again, logic cannot sustain the claim. From the argument's presentation, we are unable to ascertain the nature of the hypothesis. If the hypothesis is unsupported, the conditional argument fails. In the instance of enforcement of the statute in a rural community versus an impacted urban community and the interplay of executive law enforcement discretion, only speculation can provide grounds for argument—hardly a basis to conclude that enforcement standards are insufficient. Doubtless, the statute unequivocally prohibits both the out-of-state visitor and the inner-city youth who have been convicted of a felony from possessing a firearm. To that there can be no gainsay. The standard is clear and sufficient.

2. Overbreadth

¶ 19. Thomas contends that the felon-in-possession statute is overbroad because "it [sweeps within] its ambit instances of the constitutionally secured right to bear arms for security, defense, hunting,

526

recreation and other lawful purposes which has [sic] been accorded non-felons and felons alike by its unqualified language."

¶ 20. Although article I, section 25 creates a fundamental right, such a right is not absolute, but subject to reasonable restriction. *State v. Cole*, 2003 WI 112, ¶ 26, 264 Wis. 2d 520, 665 N.W.2d 328. As recognized long ago in *Zillmer v. Kreutzberg*, 114 Wis. 530, 536–37, 90 N.W. 1098 (1902):

> The very existence of government renders imperative a power to restrain the individual to some extent. This is called the "police power," . . . . It may be described, though not defined, as the power of the government to regulate conduct and property of some for safety and property of all.

¶ 21. In the proper constitutional setting, this conditional doctrine is still fundamentally sound. The issue then is whether the restriction placed upon felons prohibiting them from possessing firearms is a reasonable exercise of the State's inherent police power.

■

¶ 22. "A statute is . . . overbroad when its language, given its normal meaning, is so sweeping that its sanctions may be applied to conduct which the state is not permitted to regulate." *City of Milwaukee v. Wilson*, 96 Wis. 2d 11, 19, 291 N.W.2d 452 (1980) (footnote omitted). However, as recognized under the police power doctrine, the State does possess a fair measure of regulatory authority tempered by the rule of reasonableness.

■

¶ 23. To support his argument of overbreadth, Thomas again returns to the proposition that the right to bear a firearm for the purposes of security, defense,

hunting, recreation and other lawful purposes is unrestricted and unqualified. As we have already concluded, the legislative history belies any basis for this claim. This history conclusively demonstrates that the right to bear firearms was conditioned and qualified. Although not expressly stated in any of the documents depicting the legislative history of WIS. STAT. § 941.29, the legislature determined as a matter of public safety that it was desirable to keep weapons out of the hands of individuals who had committed felonies. "The restriction on a convicted felon's ability to possess firearms comes about incident to firearm regulation out of concerns of public safety." *State v. Thiel*, 188 Wis. 2d 695, 707–08, 524 N.W.2d 641 (1994). From this rationale, we deem § 941.29 to be a reasonable limitation on the constitutional right to bear arms.[5]

## C. EQUAL PROTECTION

¶ 24. Thomas next contends that the felon-in-possession statute violates the equal protection clause. We are not convinced. A party who challenges the

---

[5] From a non-exhaustive search, we note the following decisions that have found a rational relationship between statutes forbidding the possession of firearms by convicted felons and the legitimate state purpose of protecting the public from misuse of firearms. *People v. Blue*, 544 P.2d 385 (Colo. 1975); *Landers v. State*, 299 S.E.2d 707 (Ga. 1983); *State v. Amos*, 343 So. 2d 166 (La. 1977); *State v. Friel*, 508 A.2d 123 (Me. 1986); *People v. Swint*, 572 N.W.2d 666 (Mich. Ct. App. 1997); *State v. Comeau*, 448 N.W.2d 595 (Neb. 1989); *State v. Smith*, 571 A.2d 279 (N.H. 1990); *State v. Ricehill*, 415 N.W.2d 481 (N.D. 1987); *State v. Hirsch*, 34 P.3d 1209 (Or. Ct. App. 2001); *Wilson v. State*, 44 S.W.3d 602 (Tex. Ct. App. 2001); *State v. Krzeszowski*, 24 P.3d 485 (Wash. Ct. App. 2001) and *Carfield v. State*, 649 P.2d 865 (Wyo. 1982).

constitutionality of a statute on equal protection grounds must demonstrate that the statute treats members of a similarly situated class differently. *Castellani v. Bailey*, 218 Wis. 2d 245, 261, 578 N.W.2d 166 (1998). When such a challenge is presented, there exists a strong presumption of constitutionality for legislative enactments. *Id.* Every presumption favoring the validity of the law must be allowed. *Id.* In addition, a party challenging a statute has the burden of proving the law unconstitutional beyond a reasonable doubt. *Id.*

¶ 25. Prior to engaging in a constitutional analysis, we must first determine the level of judicial scrutiny that the felon-in-possession statute requires. "Equal protection requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *State v. Annala*, 168 Wis. 2d 453, 468, 484 N.W.2d 138 (1992). If a suspect class is not involved, the "appropriate analysis is whether the legislative classification rationally furthers a purpose identified by the legislature." *Id.* Under this test, equal protection is violated only if the classification rests upon grounds wholly irrelevant to the achievement of the state's objective. *State v. Martin*, 191 Wis. 2d 646, 656–57, 530 N.W.2d 420 (Ct. App. 1995). The legislature is not required to state the purpose or rationale justifying the classification. As long as there is a plausible explanation for the classification, we will uphold the law. The legislature's underlying assumptions may even be erroneous, but the very fact that they are arguable is sufficient, on a rational-basis review, to "immunize" the legislative choice from constitutional challenge. *Id.* at 658.

■■■■■■

¶ 26. We begin by recognizing that convicted felons are not a suspect class. *United States v. Wicks*, 132 F.3d 383, 389 (7th Cir. 1997). Furthermore, in *Cole*, 264 Wis. 2d 520, ¶ 21, although the state constitutional right to bear arms is a fundamental right, our supreme court has ruled that neither strict scrutiny nor intermediate scrutiny is to be applied in challenges to firearms statutes under article I, section 25. Thus, it logically follows that when examining a challenge to a weapons statute; *i.e.,* felon-in-possession under the equal protection clause, the rational basis test ought to be used.[6]

■■■■

¶ 27. "A legislative classification satisfies the rational basis test if it meets five criteria:"

> (1) All classification[s] must be based upon substantial distinctions which make one class really different from another.

> (2) The classification adopted must be germane to the purpose of the law.

> (3) The classification must not be based upon existing circumstances only . . . .

> (4) To whatever class a law may apply, it must apply equally to each member thereof.

> (5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

*Aicher v. Wisconsin Patients Comp. Fund,* 2000 WI 98, ¶ 58, 237 Wis. 2d 99, 613 N.W.2d 849.

---

[6] Thomas does not question the use of this level of scrutiny and, in fact, adopts it in his brief.

¶ 28. In alleging an equal protection violation, Thomas makes three arguments. He asserts that the classification established in WIS. STAT. § 941.29: (1) does not differentiate between felons and misdemeanants; (2) does not differentiate between felons convicted of violent versus non-violent crimes; and (3) the statute is arbitrary and irrational because it exempts "correctional officers employed before May 1, 1982, who are required to possess a firearm as a condition of employment WIS. STAT. § 941.29(6)." We shall consider each assertion in turn.

¶ 29. Thomas's first claim is based upon the above-stated criteria (1) and (5) in that the classification established by the statute is not based upon substantial distinctions differentiating felons from misdemeanants. This assertion is left totally undeveloped; thus, we are under no obligation to address it. *State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992). Suffice it to say, however, it takes little effort to discern the fundamental difference between being convicted of a felony and a misdemeanor. A felony is a crime punishable by incarceration in a state prison. WIS. STAT. § 939.60. In Wisconsin, felons are not entitled to vote until their civil rights have been restored by service of the sentence. WIS. CONST. art. III, § 2(4)(a); WIS. STAT. § 6.03(1)(b). These restrictions do not apply to a misdemeanant. Thus, felons are in a separate, distinct class from other criminals. Because the legislature, in the exercise of its police powers for the purpose of public safety and the general welfare, has determined that the nature and consequences of a felony are of a greater magnitude than that of a misdemeanor, it has

provided greater penalties and sanctions for those convicted of felonies. The classification is clear, distinct and substantial.

¶ 30. Thomas's second claim is based upon a distinction he draws between felons who commit violent offenses versus those whose felonies are non-violent. He argues that the "status of [a] felon is not necessarily rationally related to a proclivity to violence or endangering safety which arguably might underlie the gun possession law." His prior conviction for fleeing an officer did not involve violence. Thus, he concludes that a "classification without [a] rational relationship to the substantive character of the various crimes is inherently irrational and so a violation of the principles of . . . equal protection."

¶ 31. Although Wisconsin courts have not addressed this precise issue, we need not look far to find both federal and state cases that have consistently found a rational relationship between statutes forbidding possession of firearms by any and all convicted felons and the legitimate state purpose of protecting the public from the misuse of firearms. We first turn to two federal decisions.

¶ 32. The United States Supreme Court in *Lewis v. United States*, 445 U.S. 55 (1980), upheld the rationality of a provision of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 1202(a)(1) which prohibited the possession of firearms by a person convicted of any felony. Lewis had been convicted of the felony of breaking and entering. The Court rejected the claim that a conflict existed between due process and the provision that did not distinguish between violent and nonviolent felonies. The Court specifically found that Congress sought to rule broadly—to keep guns out

of the hands of those who have demonstrated that they may not be entrusted with a firearm without becoming a threat to society. *Lewis,* 445 U.S. at 64–65. The Court went on to add:

> Congress could rationally conclude that any felony conviction . . . is a sufficient basis on which to prohibit the possession of a firearm . . . . This Court has recognized repeatedly that a legislature constitutionally may prohibit a convicted felon from engaging in activities far more fundamental than the possession of a firearm.

*Id.* at 66.

¶ 33. In *United States v. Harris,* 537 F.2d 563 (1st Cir. 1976) the United States Court of Appeals for the First Circuit earlier rejected an argument that because Harris had been convicted of a nonviolent felony of larceny, the federal statute prohibiting felons from possessing firearms lacked a rational relationship to a legitimate state purpose. The First Circuit declared:

> [A] government is not "prevented by the equal protection clause from confining 'its restrictions to those classes of cases where the need is deemed to be clearest' "... and the inclusion of appellant's less extreme, but nonetheless serious offense, does not deprive the statutory classification of " 'some relevance to the purpose for which the classification is made' " . . . .
>
> "It is not 'without support in reason,' . . . to conclude that a thief whose crime was a federal felony is an undesirable person to possess firearms; proof of an inescapable relationship between past and future conduct is not requisite."

*Id.* at 565 (citations omitted).

¶ 34. Even closer to the issues presented in this appeal is *State v. Brown,* 571 A.2d 816 (Me. 1990). There, as in this appeal, Brown initially challenged the

constitutionality of Maine's felon-in-possession statute vis-à-vis a constitutional amendment granting the right to bear arms. Prior to his arrest, he had been convicted of operating a vehicle after revocation of the license of a habitual motor vehicle offender, which was a Class C felony, subject to incarceration for up to five years. Brown raised the same equal protection challenge as does Thomas.

¶ 35. The Supreme Judicial Court of Maine observed that:

> Statutes . . . prohibiting possession of firearms by a felon regardless of the nature of the underlying felony, have never been found constitutionally deficient. These statutes bear a rational relationship to the legitimate governmental purpose of protecting the public from the possession of firearms by those previously found to be in such serious violation of the law that imprisonment for more than a year has been found appropriate . . . . One who has committed any felony has displayed a degree of lawlessness that makes it entirely reasonable for the legislature, concerned for the safety of the public it represents, to want to keep firearms out of the hands of such a person.

*Id.* at 821 (citations omitted). Concluding, the same court declared:

> Labeling his preexisting felony status the product of a "nonviolent" crime obscures its seriousness as well as the very real threat to public safety created by his continued misconduct, a threat that might well be aggravated by the availability of a firearm. Defendant has demonstrated a disregard for the law to such an extent that, as applied to him, a legislative determination that he is an undesirable person to possess a firearm is entirely reasonable and consonant with the legitimate exercise of police power for public safety.

*Id.* (citations omitted).

¶ 36. In the face of the logic and persuasive quality of these decisions, which we adopt, we conclude there is no merit to Thomas's second argument.[7]

■■

¶ 37. Thomas's third equal protection argument again asserts the felon-in-possession statute is arbitrary and irrational because it exempts correctional officers employed before May 1, 1982, who are required to possess a firearm as a condition of employment. Wis. Stat. § 941.29(6). We are not convinced.

¶ 38. Prior to the enactment of Wis. Stat. § 941.29, Wisconsin did not prohibit the possession of firearms by felons. When the original version of the statute was enacted, § 941.29 did not include an exception for correctional officers. 1981 Wis. Laws ch. 141 (published Mar. 30, 1982). When the 1982 Budget Adjustment Bill was passed, it included an exception for convicted felons who were then employed as correctional officers. *See* § 941.29(6).[8] The Budget Adjustment Act was published April 30, 1982, and became effective May 1, 1982. 1981 Wis. Laws ch. 317, § 2004.

---

[7] *See Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 221 Wis. 2d 800, 807 n.2, 586 N.W.2d 29 (Ct. App. 1998), *aff'd,* 2000 WI 26, 233 Wis. 2d 314, 607 N.W.2d 276 (when Wisconsin courts have not yet addressed a particular issue, we may use cases from other jurisdictions as persuasive authority).

[8] Wisconsin Stat. § 941.29(6) provides:

> The prohibition against firearm possession under this section does not apply to any correctional officer employed before May 1, 1982, who is required to possess a firearm as a condition of employment. This exemption applies if the officer is eligible to possess a firearm under any federal law and applies while the officer is acting in an official capacity.

¶ 39. From this review, we learn that within a month after the enactment of original WIS. STAT. § 941.29, an exemption was created to "grandfather" convicted felons who were working as correctional officers. Amendments to legislation are not created in a vacuum. Section 941.29(6) is no exception. It is not unreasonable to presume that the drafters of the original statute overlooked the fact that as of the effective date of the statute, the correctional system had in its employ individuals who had previously been convicted of a felony. To not create an exception for those individuals reasonably would have caused not only a management-staffing problem, but also one of security. There is no other discernible reason for the amendment. This is a plausible explanation for the creation of this narrow class of former felons.

## D. NEW TRIAL IN INTEREST OF JUSTICE

¶ 40. Lastly, Thomas claims he should be granted a new trial in the interest of justice because the verdicts convicting him on the felon-in-possession count and acquitting him on the carrying a concealed weapon count are inconsistent. We reject this claim for two reasons.

¶ 41. First, inconsistency in criminal verdicts is not *per se* grounds for reversal. *State v. Johnson*, 184 Wis. 2d 324, 348, 516 N.W.2d 463 (Ct. App. 1994). Our supreme court in *State v. Mills*, 62 Wis. 2d 186, 191, 214 N.W.2d 456 (1974), has declared:

> It has been universally held that logical consistency in the verdict as between the several counts in a *criminal* information is not required. The verdict will be upheld despite the fact that the counts of which the

defendant was convicted cannot be logically reconciled with the counts of which the defendant was acquitted.

(Emphasis added.)

¶ 42. In *State v. Thomas*, 161 Wis. 2d 616, 631, 468 N.W.2d 729 (Ct. App. 1991), we explained:

> The fact that a not-guilty verdict is inconsistent with another verdict finding the defendant guilty does not require, or by itself permit, reversal of a judgment entered on the finding of guilt . . . since there is no way of knowing whether the inconsistency was the result of leniency, mistake, or compromise . . . .

¶ 43. In our body of law there has existed a long-recognized distinction between inconsistent civil verdicts and criminal verdicts and the logical consequences. Thomas proffered no sound reason why we ought to apply civil standards to criminal verdicts. We decline the invitation.

¶ 44. Second, from our review of the record, we find no inconsistency in the verdict in light of the evidence presented. To gain a conviction on the felon-in-possession charge, the State only had to convince the jury that Thomas possessed the gun. Officer Heidemann was the only witness who testified about Thomas's actions when he exited the parked vehicle. He testified he observed Thomas pull the black gun from the waistband of his pants. That is sufficient evidence to convict on the felon-in-possession charge. It was not unreasonable, however, for the jury to have concluded that the handgun was visible from the waistband and therefore not hidden from ordinary view. Thus, the jury could have decided that the State failed to prove that Thomas was carrying a *concealed* weapon. Accordingly, we conclude there was no inconsistency in the verdicts

rendered. Moreover, inconsistency in criminal verdicts is permitted and is not a basis for reversal.

*By the Court.*—Judgment affirmed.

¶ 45. SCHUDSON, J. (*concurring*). Although I sign onto the majority's bottom lines, I do not join its opinion for several reasons. Many of those reasons relate to what I deem to be drafting deficiencies; I shall not belabor them. A few, however, relate to analytical aspects of the opinion, one of which I shall address.

¶ 46. The majority writes, "Because the legislature, in the exercise of its police powers for the purpose of public safety and the general welfare, has determined that the nature and consequences of a felony are of a greater magnitude than that of a misdemeanor, it has provided greater penalties and sanctions for those convicted of felonies." Majority at ¶ 29. I am not at all convinced that the legislature has done so or, if it has, that its determinations are logical. A few examples are illuminating.

¶ 47. One man beats his wife, harming her physically and emotionally and traumatizing their children who witness the assault. He may, however, *only* have committed battery, a misdemeanor punishable by less than one year in jail. Another man enters a garage to steal a shovel; he has committed a burglary, punishable by years in prison.

¶ 48. One woman drives while intoxicated, threatening the lives of countless citizens. Under Wisconsin's drunk driving laws—the weakest in the nation[1]—she has committed a *non-criminal* offense if it is her first, or

---

[1] Incredibly, while falsely claiming to be tough on drunk driving, Wisconsin remains the only state that does not classify first-offense intoxicated driving as a criminal offense. *See* Wis.

only a misdemeanor unless it is her fifth (or subsequent) offense. Another woman, however, forges a check; she has committed a felony.

¶ 49. The felony/misdemeanor statutory designations are replete with anomalies such as these. They render hierarchical structures and resource allocations—in police departments, prosecution and public defender offices, trial courts and elsewhere in the criminal justice system—that exacerbate the chronic problems of a system trying to do too much with too little. And they render assumptions, such as the majority's, that make little sense.

¶ 50. Thus, strangely enough perhaps, Thomas, in this appeal, has stumbled onto a somewhat accurate sense of this anomaly. And while the anomalous felony/misdemeanor distinction does not lead to the legal conclusion he seeks, it should not lead to the majority's tacit acceptance of an old assumption that makes no sense.

¶ 51. Accordingly, I respectfully concur.

STAT. §§ 346.63 and 346.65; *see also Welsh v. Wisconsin*, 466 U.S. 740, 755–56 (1984) (Blackmun, J., concurring):

> And it is amazing to me that [Wisconsin,] one of our great States—one which, by its highway signs, proclaims to be diligent and emphatic in its prosecution of the drunken driver—still classifies driving while intoxicated as a *civil* violation that allows only a money forfeiture . . . so long as it is a *first* offense. The State, like the indulgent parent, hesitates to discipline the spoiled child very much, even though the child is engaging in an act that is dangerous to others who are law abiding and helpless . . . . [Hence,] the highway deaths and injuries continue.

*Id.* (citation omitted).